# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| DARLENE G.,[1] | : | Case No. 3:23-cv-00326 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATION[2]

---

Plaintiff filed an application for Disability Insurance Benefits in September 2013. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff filed an action with this Court.[3] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council remanded the case pursuant to the District Court's order. Another ALJ held a hearing pursuant to the remand order

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

[3] Assigned to District Judge Walter H. Rice, Case Number 3:16-cv-00495.

and again concluded that Plaintiff was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review of that decision,

and Plaintiff filed another action with this Court.[4] The Court remanded the case to the

Commissioner under Sentence Four of 42 U.S.C. § 405(g), and the Appeals Council

remanded pursuant to the District Court's order. The ALJ held another hearing and, for a

third time, concluded that Plaintiff was not under a "disability" as defined in the Social

Security Act. After the Appeals Council denied Plaintiff's request for review of that

decision, Plaintiff filed what is now her third action with this Court.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, the

undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be

**AFFIRMED**.

## I.     BACKGROUND

Plaintiff initially asserted that she was disabled beginning on January 1, 2007. She

subsequently amended the alleged disability onset date to January 9, 2009.

(Administrative Record, "AR," Doc. No. 6-2 at PageID 58; Doc. No. 6-15 at PageID

1213.) As of the amended alleged disability onset date, Plaintiff was 55 years old and was

considered a "person closely approaching advanced age" under the Social Security

regulations. 20 C.F.R. § 404.1563(d). She last met the insured status requirements on

---

[4] Assigned to the undersigned Magistrate Judge, Case Number 3:20-cv-00336.

December 31, 2010, at which time she was 56 years old and was a "person of advanced age" under 20 C.F.R. § 404.1563(e). Plaintiff has a high school education. 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record (AR, Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-15 at PageID 1184-1207), Plaintiff's Statement of Errors ("SE," Doc. No. 7), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

3

"Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the

4

Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of January 9, 2009, through her date last insured of December 31, 2010.

Step 2: Through the date last insured, she had the severe impairments of lumbar spine sprain and strain and left rotator cuff tear.

Step 3: She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 CFR § 404.1567(b), subject to the following limitations: "(1) occasionally crawling; (2) never climbing ladders, ropes, or scaffolds; (3) occasional use of the left upper extremity for pushing, pulling, and overhead reaching; and (4) no work around hazards such as unprotected heights or dangerous machinery."

> Through the date last insured, Plaintiff was capable of performing
> past relevant work as a housekeeper, as the job was generally
> performed in the national economy.

(Decision, Doc. No. 6-15 at PageID 1197-99.) These findings led the ALJ to conclude

that Plaintiff did not meet the definition of disability and so was not entitled to benefits.

(*Id.* at PageID 1199.)

### B. The ALJ's Symptom Severity Analysis

The ALJ summarized Plaintiff's testimony, claimed symptoms, reported daily

activities, and subjective complaints during her medical appointments. (Decision, Doc.

No. 6-15 at PageID 1189-97.) The ALJ also explained the applicable legal standard for

evaluating Plaintiff's symptoms. (*Id.* at PageID 1196-97 (citing 20 C.F.R. § 404.1529 and

Social Security Ruling (SSR) 16-3p).) Significantly, at Step Two, the ALJ summarized

the medical records that documented Plaintiff's left shoulder and back condition. (*Id.* at

PageID 1190-91.) The ALJ explained that Plaintiff sustained a work-related injury in

December 2005 and was initially diagnosed with sprains of the rotator cuff and lumbar

spine. (*Id.* at PageID 1190.) The ALJ acknowledged that subsequent imaging in February

2006, which was performed in response to Plaintiff's complaints of "persistent shoulder

pain and decreased range of motion," showed a high-grade partial tear of the left rotator

cuff with "some degree" of degenerative joint disease." (*Id.*) The ALJ also acknowledged

that an orthopedic surgeon evaluated Plaintiff in March 2006 and documented physical

examination findings of "limitation of motion with significant pain with drop arm testing

and comparative weakness." (*Id.*) The ALJ stated that the surgeon "noted the possibility

of surgery in [Plaintiff's] case." (*Id.*) The ALJ concluded: "Nonetheless, measures in

6

treatment for [Plaintiff's] ongoing pain complaints prior to the date last insured remained

entirely conservative mostly consisting of physical therapy (Exhibits 6F / 17F) and anti-

inflammatory and pain medications (Exhibits 4F / 10F / 16F)." (*Id.* at PageID 1190-91.)

> In the RFC analysis, the ALJ concluded:
>
> A "disabling" extent of functional limitation has not been established by convincing objective medical evidence during the period of time that [Plaintiff] had insured status (through December 31, 2010) given examination and imaging findings as discussed herein. Even with treatment limited to conservative measures such as physical therapy, [Plaintiff] showed improvements in both strength and range of motion and at the time of her occupational therapy evaluation in November 2015 she reportedly was independent with daily living activities (Exhibit 23F at 330).

(Decision, Doc. No. 6-14 at PageID 1197.) The ALJ also explained his decision to

include certain restrictions in the RFC. (*Id.*) The ALJ stated that he limited Plaintiff to

light exertion with additional postural and manipulative limitations to "adequately

addres[s] the location, duration, frequency, and intensity of the claimant's alleged

symptoms, as well as precipitating and aggravating factors, to the extent that such

symptoms and aggravating factors are supported by objective medical evidence and

clinical findings through the Title II date last insured." The ALJ also explained that the

record contained "no evidence of adverse side effects from treatment or medication that

would have prevented [Plaintiff] from performing competitive work activity at the 'light'

level of exertion on a regular and continuing basis at any time on or before December 31,

2010." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred because he did not "properly evaluate [Plaintiff's] symptom severity pursuant to SSR 16-3p and failed to build a logical bridge between the evidence prior to the date last insured and his conclusions." (SE, Doc. No. 7 at PageID 1880.) For the reasons discussed below, these assertions are not well-taken and the undersigned recommends that the ALJ's decision be affirmed.

### A.    The ALJ Did Not Reversibly Err In Evaluating Plaintiff's Symptom Severity.

#### 1.    Applicable law

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 404.1529) and Social Security Ruling (SSR) 16-3p, which mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[5]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id.* Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an

---

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The ALJ must decide whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8.  The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that these statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2.      The location, duration, frequency, and intensity of pain or other symptoms;

3.      Factors that precipitate and aggravate the symptoms;

4.      The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.      Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.      Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.      Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

The ALJ will also consider whether the individual sought medical treatment and followed the treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. Similarly, "if the individual fails to follow prescribed treatment that might improve

10

symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*.

However, the ALJ "will not find an individual's symptoms inconsistent . . . on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *9. The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added); *cf. Dooley v. Comm'r of Soc. Sec*., 656 F. App'x 113, 119 (6th Cir. 2016) (the ALJ must consider the reasons for not obtaining treatment "before drawing an adverse inference from the claimant's lack of medical treatment.").

### 1.    Discussion

The undersigned finds that the ALJ complied with the two-step process required by 20 C.F.R. § 404.1529 and SSR 16-3p. Specifically, the ALJ determined that Plaintiff has medically determinable impairments (severe impairments of lumbar spine sprain and strain and left rotator cuff tear, and nonsevere impairments of hip arthritis, status post left wrist and left arm fracture, lumbar degenerative disc disease, depression, and anxiety) that could reasonably cause some of the alleged symptoms. (Decision, Doc. No. 6-15 at PageID 1190-92.) The ALJ then considered the evidence in the record and found that

Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 1196-97.) Because the ALJ's findings are supported by substantial evidence, the Court should affirm the ALJ's decision.

Plaintiff challenges the ALJ's findings at the second step of the analysis related to her physical impairments, arguing that the evidence cited by the ALJ does not, in fact, show that Plaintiff was "independent with daily living activities." (SE, Doc. No. 7 at PageID 1885.) Plaintiff also argues that both objective medical evidence and Plaintiff's treatment history support her allegations of symptom severity. (*See* SE, Doc. No. 7 at PageID 1885-87.) But the ALJ appropriately evaluated Plaintiff's physical symptoms— including her treatment history—pursuant to the applicable regulations, and substantial evidence supports the ALJ's conclusions.

As discussed above, the ALJ summarized Plaintiff's subjective complaints related to her physical impairments. In the summary of hearing testimony and at Step Two, the ALJ noted that prior to the date last insured Plaintiff complained of symptoms such as left shoulder pain, back pain, and difficulty lifting her non-dominant left arm overhead. (Decision, Doc. No. 6-15 at PageID 1189-91.) The ALJ cited medical records that documented Plaintiff's treatment for her left shoulder and back conditions, and he acknowledged many of the abnormal examination findings which included limited range of motion, significant pain with drop-arm testing, and weakness. (*Id.* (citing AR, Doc. No. 6-7 at PageID 280-81, 438-89).) The ALJ cited a February 2006 left shoulder MRI that showed a high-grade partial tear of the left rotator cuff with degenerative joint

12

disease. (*Id.* at PageID 1190 (citing AR, Doc. No. 6-7 at PageID 277, 437, 440).) The

ALJ also acknowledged that an orthopedic surgeon evaluated Plaintiff in March 2006 and

"noted the possibility of surgery." (*Id.*)

The ALJ compared this evidence to other records dated prior to the date last

insured that showed "entirely conservative" treatment consisting of anti-inflammatory

and pain medications, as well as physical therapy. (AR, Doc. No. 6-15 at PageID 1190-91

(citing AR, Doc. No. 6-7 at PageID 282-96, 301-38, 408-24).) In the RFC analysis, the

ALJ discounted the medical opinions from Doctors' Urgent Care because they were

completed shortly after Plaintiff's December 2005 shoulder injury and so did not "fairly

represent either [Plaintiff's] lifting ability or her ability to use her left arm after an

appropriate period of recovery." (*Id.* at PageID 1194-95.) The ALJ explained:

> This conclusion becomes all the more apparent on review of [Plaintiff's]
> physical therapy records that show decreased pain (Exhibit 13F at 9) and
> improvements in [Plaintiff's] activity level and overall condition as well as
> left shoulder strength from 4/5 to 4+/5, grip/pinch from 40.0 to 50.0
> pounds, and flexion range of motion from 147 to 162 by June 2006 (Exhibit
> 6F at 13, 23).

(*Id.* at PageID 1195 (citing AR, Doc. No. 6-7 at PageID 313, 323).) The ALJ accounted

for this evidence by limiting Plaintiff to the reduced range of light work in the RFC. (*Id.*

at PageID 1193, 1197.)

The ALJ also acknowledged Plaintiff's complaints of left wrist pain after a fall in

April 2010. (Decision, Doc. No. 6-15 at PageID 1189-92.) The ALJ noted that Plaintiff

underwent open reduction and internal fixation surgery for a left wrist fracture at that

time. (*Id.* at PageID 1192.) He concluded: "as [Plaintiff] testified she has no ongoing

symptoms such as hand/wrist pain or difficulties using her hands, there is no indication of significant work-related functional limitations resulting from [the fracture and surgery]." (*Id.*) The ALJ concluded that Plaintiff's left wrist fracture was nonsevere. (*Id.* at PageID 1191-92.)

Further, the ALJ addressed medical records that documented treatment for other physical complaints that occurred after the date last insured. (Decision, Doc. No. 6-15 at PageID 1192-93.) The ALJ stated that degenerative changes of the hips were not documented until February 2014—over four years after the relevant time period—and were only mild in severity. (*Id.* at PageID 1192 (citing AR, Doc. No. 6-7 at PageID 426).) The ALJ explained that Plaintiff sustained a left humeral fracture and underwent open reduction and internal fixation surgery, but not until September 2015. (*Id.* (citing AR, Doc. No. 6-14 at PageID 918, 940).) He acknowledged that Plaintiff was treated for deep vein thrombosis following the surgery but explained that the condition resolved. (*Id.* (citing AR, Doc. No. 6-14 at PageID 964, 972, 977, 1144).) The ALJ also acknowledged that Plaintiff was treated for worsening back pain with radicular-type symptoms, but not until after the date last insured. (*Id.* (citing AR, Doc. No. 6-22 at PageID 1641, 1663, 1722, 1782, 1878).) The ALJ cited lumbar imaging between August 2014 and January 2021 that showed subacute fractures at the L2 and L5 levels, as well as moderate-level multilevel degenerative changes with possible nerve root impingement, but he reiterated that the complaints and imaging occurred well after the relevant time period. (*Id.* (citing AR, Doc. Nos. 6-14 at PageID 857; 6-22 at PageID 1641, 1650, 1659; 6-23 at PageID 1782).) The ALJ also noted that despite these new back findings, Plaintiff's treatment

14

"remained limited to similar conservative measures of physical therapy, pain medications, muscle relaxants, steroid tapers, and anti-inflammatories." (*Id.*) The ALJ concluded that these conditions were not "severe" prior to the date last insured. The Court finds that the ALJ's conclusions about Plaintiff's physical impairments and limitations are supported by substantial evidence and so should be affirmed.

Plaintiff challenges the following statement by the ALJ: "Even with treatment limited to conservative measures such as physical therapy, [Plaintiff] showed improvements in both strength and range of motion and at the time of her occupational therapy evaluation in November 2015 she reportedly was independent with daily living activities (Exhibit 23F at 330)." (SE, Doc. No. 7 at PageID 1885 (citing Decision, Doc. No. 6-15 at PageID 1197).)

Plaintiff first argues that the ALJ mischaracterized the record because the April 2010 left wrist open reduction and internal fixation surgery does not constitute "conservative" treatment. (SE, Doc. No. 7 at PageID 1886; Reply, Doc. No. 10 at PageID 1907.) This contention is not well-taken. The ALJ did not state that Plaintiff's left wrist treatment was conservative; he described Plaintiff's treatment as "conservative" when he evaluated Plaintiff's severe impairments, which did not include her wrist fracture. Indeed, the ALJ acknowledged the April 2010 surgery at Step Two when he discussed Plaintiff's left wrist condition. (Decision, Doc. No. 6-15 at PageID 1192.) The ALJ explained that the record showed no evidence of any ongoing issues that would support any "significant work-related functional limitations resulting from [the fracture and surgery]," and he concluded that the condition was nonsevere. (*Id.*)

15

Instead, the ALJ described Plaintiff's treatment as "conservative" (earlier at Step Two and in the RFC analysis) when he evaluated Plaintiff's severe physical impairments of a lumbar spine sprain and left shoulder rotator cuff tear. (*Id.* at PageID 1191-92, 1197.) The ALJ's analysis in this regard is supported by substantial evidence.

As discussed above, the ALJ explained that Plaintiff's treatment for her lumbar spine and left shoulder conditions consisted of physical therapy and anti-inflammatory and pain medications. (*Id.* at PageID 1190-91.) Plaintiff saw an orthopedic surgeon in March 2006 after a February 2006 left shoulder MRI showed partial tearing of the rotator cuff tendon and distal supraspinatus muscle. (AR, Doc. No. 6-7 at PageID 277, 280.) The provider discussed "different treatment options," including surgery or injections. (*Id.* at PageID 280.) But the records show no follow up with the surgeon.

Instead, Plaintiff presented for a physical therapy evaluation in May 2006. (AR, Doc. No. 6-7 at PageID 328.) Plaintiff complained of a "marked degree" of loss of function. (*Id.*) A physical examination at that time showed left shoulder muscle strength at a level of four out of five (with five being the highest), left-sided grip strength at forty pounds, and decreased range of motion of the left shoulder (flexion: 147 out of 180 degrees; abduction: 159 out of 180 degrees; external rotation: 47 out of 90 degrees; and internal rotation: 90 out of 90 degrees). (*Id.* at PageID 328-29.) Additionally, Timothy Haney, P.T. indicated that several tests (elevation-impingement, empty can, Hawkins-Kennedy impingement, internal rotation/horizontal adduction-impingement, and passive external rotator cuff testing) aggravated Plaintiff's symptoms. (*Id.* at PageID 329.) In the Assessment section of the report, Therapist Haney recommended skilled rehabilitative

16

therapy (three sessions per week over a thirty-day period) in conjunction with a home exercise program, and stated that Plaintiff's overall rehabilitation potential was "good." (*Id.* at PageID 329-30.)

Plaintiff initially continued physical therapy as Therapist Haney recommended. (AR, Doc. No. 6-7 at PageID 319-25.) By the sixth session in June 2006, Plaintiff reported that her overall condition was improving. (*Id.* at PageID 302.) She reported improvement in her daily activities and said that her pain had decreased following the previous treatment. (*Id.*) Although several of the special tests continued to aggravate her symptoms, Plaintiff's left-sided grip strength (fifty pounds) and range of motion (extension: 162 out of 180 degrees; flexion: 180 out of 180 degrees; external rotation: 86 out of 90 degrees; and internal rotation: 90 out of 90 degrees) had improved. (*Id.*)

Plaintiff reported an improved condition, improved activity, and decreased pain at the seventh and eighth visits later that month. (*Id.* at PageID 309, 311.) Although Plaintiff indicated at the ninth and tenth visits that her pain had increased since the last treatment, she nevertheless reported that her overall condition and daily activities were continuing to improve. (*Id.* at PageID 313, 316.) Physical examinations again showed increased left-sided grip strength and range of motion compared to the initial visits. (*Id.*)

Plaintiff cancelled the next visit because of a "transportation issue" (AR, Doc. No. 6-7 at PageID 318), and the record shows no further physical therapy sessions after that time. In fact, the record documents no additional complaints related to Plaintiff's left shoulder or back conditions—much less any medical visits or examinations documenting abnormalities—after that time and through the date last insured. (*See generally* AR, Doc.

17

Nos. 6-7 to 6-14.) When Plaintiff sought emergency room treatment in April 2010 for her left wrist fracture, she did not complain of any left shoulder pain. (AR, Doc. No. 6-13 at PageID 658-64.) Moreover, a physical examination showed no tenderness of the left shoulder and the attending provider noted that Plaintiff moved all four extremities "without difficulty." (*Id.* at PageID 61, 63.)

Plaintiff correctly points out that the ALJ mischaracterized a November 2015 occupational therapy note, which "actually indicates that [Plaintiff] daily living activities and mobility were impaired." (SE, Doc. No. 7 at PageID 1885 (citing AR, Doc. No. 6-14 at PageID 1147).)[6] Specifically, the note states that Plaintiff's "Patient Goal" was to "[r]egain full use of her [left upper extremity] in order to resume all daily tasks independently." (AR, Doc. No. 6-14 at PageID 1144.) But this is a harmless error. Plaintiff's November 2015 complaints of upper extremity weakness, loss of range of motion, decreased strength, and decreased performance of self-care and household activities all related to a new left upper extremity injury from a fall in September 2015, well over five years after the date last insured. (AR, Doc. 6-14 at PageID 1144-45.) Therefore, any deficits documented in this therapy note do not relate back to the time period at issue. For the reasons discussed above, the ALJ's conclusions about Plaintiff's symptom severity prior to the date last insured are supported by substantial evidence.

---

[6] Plaintiff cites to an occupational therapy note dated November 9, 2015. (SE, Doc. No. 7 at PageID 1885 (citing AR, Doc. No. 6-14 at PageID 1147).) The ALJ, however, cited to a November 5, 2015 occupational therapy note. (Decision, Doc. No. 6-15 at PageID 1197 (citing AR, Doc. No. 6-14 at PageID 330).) Nevertheless, both notes contain the same notation that Plaintiff's goal was to "[r]egain full use of her [left upper extremity] in order to resume all daily tasks independently." (AR, Doc. No. 6-14 at PageID 1144, 1147.)

The ALJ's conclusions are therefore supported by substantial evidence and cannot be disturbed by this Court, even if substantial evidence in the record would also support the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997). Accordingly, the undersigned recommends that the Commissioner's decision be affirmed.

**B.     The ALJ's RFC Is Supported By Substantial Evidence.**

**1.     Applicable law**

A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of limitations from his impairments and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

**2.     Discussion**

Plaintiff's argument that the ALJ "failed to build a logical bridge between the evidence and his conclusions" is not well-taken. (SE, Doc. No. 7 at PageID 1887.) Plaintiff points to several objective findings and asserts that they are "all consistent with

19

[Plaintiff's] symptom severity complaints." (*Id.* at PageID 1886; *see also* Doc. No. 10 at PageID 1908-09.) Yet as indicated above, the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). This Court is limited to determining whether the ALJ's findings are supported by substantial evidence.

The Court concludes that the ALJ's findings are, in fact, supported by substantial evidence. As discussed above, the ALJ acknowledged Plaintiff's subjective complaints. (Decision, Doc. No. 6-15 at PageID 1189-92, 1194-97.) The ALJ summarized the medical records that documented Plaintiff's treatment for her physical conditions prior to and after the date last insured, and acknowledged many of the abnormal findings that were documented in imaging reports and upon physical examinations. (*Id.*) The ALJ compared these findings to examinations in the physical therapy records, which showed improvements in strength and range of motion. (*Id.* at PageID 1195, 1197.) The ALJ concluded that the balance of the objective evidence did not support Plaintiff's allegations of disabling symptoms prior to the date last insured. (*Id.* at PageID 1197.) The ALJ nevertheless accounted for this evidence by limiting Plaintiff to the reduced range of light work set forth in the RFC (*Id.* at PageID 1193, 1197.)

Plaintiff challenges the ALJ's conclusion that "there is no indication of significant work-related functional limitations resulting from her left wrist [fracture and surgery]." (Reply, Doc. No. 10 at PageID 1907-08.) According to Plaintiff, the fact that she testified more than twelve years after the date last insured that she had no ongoing symptoms in her left hand and wrist "does not meet the ALJ's burden to build a logical bridge with the

20

evidence prior to the date last insured." (*Id.* at PageID 1908.) However, the undersigned finds that the ALJ's conclusion that Plaintiff's left wrist condition was nonsevere is supported by substantial evidence.

Plaintiff testified at the January 2023 hearing that she was not experiencing any pain in her left wrist and did not have any trouble with holding or gripping items with her left hand. (AR, Doc. No. 6-15 at PageID 1221.) Approximately four years earlier during the February 2019 hearing, Plaintiff's representative questioned her about her left wrist condition and asked whether she was having any "ongoing effects" or pain. (AR, Doc. No. 6-8 at PageID 516.)  Plaintiff responded: "No, I haven't had any problems." (*Id.*) During the initial hearing in October 2015, the ALJ stated that his questioning would focus on Plaintiff's condition during the relevant time period, through the end of 2010. (AR, Doc. No. 6-2 at PageID 59.) After the ALJ questioned Plaintiff extensively about her left shoulder condition (*id.* at PageID 61-66), he asked: "Any other physical problems you were having back then?" (*Id.* at PageID 66.) Plaintiff responded: "I can't think right now." (*Id.*) Plaintiff's representative did not ask her any follow-up questions about her left wrist condition. (*Id.* at PageID 66-67.) The hearing testimony therefore supports the ALJ's conclusion that Plaintiff's left wrist fracture was nonsevere.

The medical records also support a finding that Plaintiff's left wrist fracture did not cause any significant functional limitations. The medical records show no follow-up treatment for any left wrist complaints after the April 2010 surgery and through the date last insured. In fact, the record shows no treatment for any other medical conditions until June 2012, when Plaintiff sought emergency room treatment for rectal bleeding. (AR,

Doc. No. 6-7 at PageID 343.) The treatment note shows that Plaintiff did not complain of any musculoskeletal issues, and a physical examination showed no musculoskeletal abnormalities. (*Id.* at PageID 344-46.)

When Plaintiff presented to her primary care physician in May 2013 for a consultation about a cataract, she mentioned that she had been seeing a doctor for anxiety and hypertension. (AR, Doc. No. 6-7 at PageID 415.) The progress note references a left wrist fracture with surgery and hardware in 2010 in the "Past Medical/Surgery History" section of the record, but Plaintiff did not complain of any left wrist symptoms during that visit. (*Id.* at PageID 415-19.) Matthew Jones, M.D. documented no musculoskeletal abnormalities when he performed a physical examination. (*Id.* at PageID 418.) And although he referred Plaintiff for further cardiac testing related to hypertension, he did not make any referrals related to a musculoskeletal condition. (*Id.* at PageID 418-19.)

At the next visit in October 2013, Plaintiff complained of new-onset right arm and shoulder pain, but did not mention any left wrist issues. (*Id.* at PageID 6-7 at PageID 409-13.) Dr. Jones noted that a physical examination showed normal findings of both upper extremities. (*Id.* at PageID 412.)

At a consultative physical examination in February 2014, Plaintiff did not complain of any left wrist symptoms. (*Id.* at PageID 428-31.) Rohn Kennington, M.D. documented normal left wrist flexion and extension, as well as normal grasp, manipulation, pinch, and fine coordination abilities on the left. (*Id.* at PageID 432.) Additionally, grip strength was greater on the left than the right. (*Id.*)

22

All of this evidence supports the ALJ's conclusion that Plaintiff did not experience any significant work-related functional limitations resulting from her left wrist fracture. Taken together, the evidence cited by the ALJ constitutes substantial evidence—that is, "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Biestek*, 139 S. Ct. at 1154)—that supports the ALJ's RFC. Because the ALJ's findings are supported by substantial evidence, they cannot be disturbed by this Court even if substantial evidence in the record would support the opposite conclusion. *Key*, 109 F.3d at 273. For these reasons, the ALJ's decision should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 7) be OVERRULED;

2.    The Court AFFIRM the Commissioner's non-disability determination; and

3.    The case be terminated on the Court's docket.

s/ *Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the

methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).